UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY GUCWA and
MARK MARUSZA,

        Plaintiffs,               Case No. 2:15-cv-10815-AJT-APP
                                         Hon. Arthur J. Tarnow

    v.

DR. JEFFREY LAWLEY, DR. HARVEY
AGER, DR. W. JOHN BAKER, DR. BARRY
RUBIN and ACCIDENT FUND INSURANCE
COMPANY OF AMERICA,

        Defendants.

_____/

| MARSHALL LASSER (P25573) | MICHAEL D. WEAVER (P43985) |
|---|---|
| MARSHALL LASSER, P.C. | PLUNKETT COONEY |
| Attorney for Plaintiffs | Attorney for Defendant Dr. W. John |
| P.O. Box 2579 | Baker |
| Southfield, MI 48037 | 38505 Woodward, Suite 2000 |
| (248) 647-7722 | Bloomfield Hills, Michigan 48304 |
| mlasserlaw@aol.com | (248) 901-4025 |
| | mweaver@plunkettcooney.com |
| | |
| | SCOTT D. MacDONALD (P45789) |
| | DIXON & MacDONALD |
| | Co-Counsel for Def. Dr. W. John Baker |
| | 24901 Northwestern Highway |
| | Suite 200 |
| | Southfield, MI  48075 |
| | (248) 865-8866 |
| | scottmac@dixon-macdonald.com |

_____/

## DEFENDANT DR. W. JOHN BAKER'S MOTION TO DISMISS

NOW COMES Defendant, Dr. W. John Baker, by and through his attorneys, Plunkett Cooney, and moves for an order granting dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed to state a claim upon which relief can be granted.  This Motion is based upon the legal authorities and arguments set forth in the Brief in Support of Motion to Dismiss.

Respectfully submitted,

PLUNKETT COONEY

By: */s/*Michael D. Weaver
MICHAEL D. WEAVER (P43985)
Attorney for Defendant
Dr. W. John Baker
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4025
mweaver@plunkettcooney.com

Date: May 1, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY GUCWA and
MARK MARUSZA,

       Plaintiffs,          Case No. 2:15-cv-10815-AJT-APP
                                      Hon. Arthur J. Tarnow

   v.

DR. JEFFREY LAWLEY, DR. HARVEY
AGER, DR. W. JOHN BAKER, DR. BARRY
RUBIN and ACCIDENT FUND INSURANCE
COMPANY OF AMERICA,

       Defendants.
_____/

| | |
|---|---|
| MARSHALL LASSER (P25573) | MICHAEL D. WEAVER (P43985) |
| MARSHALL LASSER, P.C. | PLUNKETT COONEY |
| Attorney for Plaintiffs | Attorney for Defendant Dr. W. John |
| P.O. Box 2579 | Baker |
| Southfield, MI 48037 | 38505 Woodward, Suite 2000 |
| (248) 647-7722 | Bloomfield Hills, Michigan 48304 |
| mlasserlaw@aol.com | (248) 901-4025 |
| | mweaver@plunkettcooney.com |
| | |
| | SCOTT D. MacDONALD (P45789) |
| | DIXON & MacDONALD |
| | Co-Counsel for Def. Dr. W. John Baker |
| | 24901 Northwestern Highway |
| | Suite 200 |
| | Southfield, MI  48075 |
| | (248) 865-8866 |
| | scottmac@dixon-macdonald.com |

_____/

## DEFENDANT DR. W. JOHN BAKER'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INDEX TO AUTHORITIES...................................................................................... ii

CONCISE STATEMENT OF THE ISSUES PRESENTED.................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT........................................................................................................... vii

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................2

STANDARD OF REVIEW .....................................................................................4

ARGUMENT ..........................................................................................................5

      A.    The complaint fails to state a claim under RICO because Plaintiffs have not alleged an injury to business or property and, in any event, allegedly fraudulent IME reports do not constitute predicate acts under RICO and there is no allegation that anyone was deceived by the reports. ....................................................................................5

          1. Controlling law. ........................................................................5

          2. Plaintiffs fail to allege an injury to business or property. ....................8

          3. Plaintiffs fail to state a claim under RICO because they have not alleged predicate acts.........................................................11

      B.    Plaintiffs' state law tortious interference claims must be dismissed because Plaintiffs cannot show a breach of contract or valid expectancy, and they fail to allege that Dr. Baker instigated any such breach or interference. ........................15

      C.    If this court does not dismiss Plaintiffs' claims against Dr. Baker, the case should be stayed until Marusza's workers compensation proceedings are complete.............................................19

CONCLUSION ......................................................................................................23

# INDEX TO AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) ........................................................................4

*Ayres v. General Motors Corp.*,
   234 F.3d 514, 521-22 (11th Cir. 2000)................................................ vii, 12, 13

*Bender v. Southland Corp.*,
   749 F.2d 1205, 1216 (6th Cir.1984)....................................................14

*Bloch v. Ribar*,
   156 F.3d 673, 677 (6th Cir. 1998)........................................................4

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639, 650-54 (2008)........................................................ vii, 14

*Brown v. Ajax Paving Indus., Inc.*,
   752 F.3d 656 (6th Cir. 2014)........................................................ vii, 9

*Brown v. Cassens Transp. Co.*,
   546 F.3d 347, 352 (6th Cir. 2008)........................................................5

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) ........................................................ vii, 21, 22, 24

*CMI Intern, Inc v. Intermet Intern Corp*,
   251 Mich. App. 125, 131; 649 N.W.2d 808 (2002) ............................................18

*Consol. Rail Corp. v. Grand Trunk W. R. Co.*,
   No. 13-2269, 2015 WL 1727306, at *5 (6th Cir. Apr. 15,
   2015)........................................................21

*Craighead v. E.F. Hutton & Co., Inc.*,
   899 F.2d 485, 495 (6th Cir. 1990)........................................................6

*Dubuc v. El-Magrabi*,
   489 Mich. 869, 795 N.W.2d 593 (2011) ............................................20

*Dzierwa v Michigan Oil Co*,
  152 Mich App 281, 287; 393 NW2d 610, 613 (1986) ................................. 18, 20

*Evans v. Chicago*,
  434 F.3d 916, 931 (7th Cir.2006) ........................................................10

*Feldman v. Green*,
  138 Mich. App. 360, 378; 360 N.W.2d 881 (1984) ...........................................18

*Gray v. Bush*,
  628 F.3d 779, 784 (6th Cir. 2010) .............................................. vii, 22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229, 237-39 (1989) ...........................................................7

*Health Call of Detroit v Atrium Home & Health Care Services,*
  *Inc*,
  268 Mich App 83, 89-90; 706 NW2d 843 (2005) .................................. vii, 18, 19

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
  668 F.3d 393, 404 (6th Cir. 2012) ....................................................6, 7

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258, 269 (1992) ..............................................................10

*In re ClassicStar Mare Lease Litig.*,
  727 F.3d 473, 483 (6th Cir. 2013) .....................................................5

*Jackson v. Sedgwick Claims Mgmt. Serv's., Inc.*,
  731 F3d 556, 562 (6th Cir. 2013 en banc) ............................... vii, 7, 8, 10, 11, 12

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
  No. 09-11529, 2010 WL 931864, at *20 (E.D. Mich. Mar. 11,
  2010) ............................................................................. 12, 13

*Jackson v. Segwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466,
  485 (6th Cir. 2012), reh'g en banc granted, opinion vacated,
  731 F.3d 556 (6th Cir. 2013) .........................................................14

*LaMie v. Wright*,
  No. 1:12-CV-1299, 2014 WL 1686145, at *20 (W.D. Mich.
  Apr. 29, 2014) report and recommendation adopted, No.
  1:12-CV-1299, 2014 WL 3341587 (W.D. Mich. July 8, 2014)..........................10

*Lewis v. Drouillard*,
    788 F. Supp. 2d 567, 571 (E.D. Mich. 2011) ................................................ 10, 11

*McGee v. State Farm Mut. Auto. Ins. Co.*,
    No. 08-CV-392 FB CLP, 2009 WL 2132439 (E.D.N.Y. July
    10, 2009) .................................................................................................... vii, 15

*Mezibov v. Allen*,
    411 F.3d 712, 716 (6th Cir. 2005) .........................................................................4

*Moon v. Harrison Piping Supply*,
    375 F.Supp.2d 577 (E.D. Mich. 2005) aff'd in part, rev'd in
    part on other grounds and remanded, 465 F.3d 719 (6th Cir.
    2006) ................................................................................................... 17, 23, 24

*Ouwinga v. Benistar 419 Plan Servs., Inc.*,
    694 F.3d 783, 792 (6th Cir. 2012) cert. denied, 133 S. Ct.
    2735 (2013)..................................................................................................6, 7

*Pik-Coal Co. v. Big Rivers Elec. Corp.*,
    200 F.3d 884, 890 n.10 (6th Cir. 2000) .................................................................6

*Reves v. Ernst & Young*,
    507 U.S. 170, 183 (1993) .....................................................................................6

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
    859 F.2d 434, 436 (6th Cir. 1988) .........................................................................4

## STATUTES

18 U.S.C. § 1341 .....................................................................................................7

18 U.S.C. § 1343 .....................................................................................................7

18 U.S.C. § 1961 ...................................................................................................1, 6

18 U.S.C. § 1961(1) .................................................................................................7

18 U.S.C. § 1961(4) .................................................................................................6

18 U.S.C. § 1962(c) .................................................................................................5

18 U.S.C. § 1962(d) .................................................................................................6

18 U.S.C. § 1964(c) .................................................................7, 8

28 U.S.C. § 1367(c)(3)..............................................................17

M.C.L § 418.101 .......................................................................1

M.C.L § 418.435 .......................................................................3

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................... 4, 5, 9, 11, 25

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

I.   Does Plaintiffs' complaint fail to state a claim under RICO where Plaintiffs fail to allege an injury to business or property and where, in any event, allegedly fraudulent IME reports do not constitute predicate acts under RICO and there is no allegation that anyone was deceived by the reports?

Defendant Dr. W. John Baker answers, "yes."

II.  Should Plaintiffs' state law tortious interference claims be dismissed where Plaintiffs cannot show a breach of contract or valid expectancy, and where they fail allege that Dr. Baker instigated any such breach or interference?

Defendant Dr. W. John Baker answers, "yes."

III. If this court does not dismiss Plaintiffs' claims against Dr. Baker, should the case should be stayed until Marusza's state worker's compensation proceedings are complete?

Defendant Dr. W. John Baker answers, "yes."

# CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

*Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir.2000)

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)

*Brown v. Ajax Paving Indus., Inc.*, 752 F.3d 656 (6th Cir. 2014)

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)

*Gray v. Bush*, 628 F.3d 779 (6th Cir. 2010)

*Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 268 Mich App 83; 706 NW2d 843 (2005)

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 09-11529, 2010 WL 931864 (E.D. Mich. Mar. 11, 2010)

*Jackson v. Sedgwick Claims Mgmt. Serv's., Inc.*, 731 F3d 556, 562 (6th Cir. 2013 en banc)

*McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-392 FB CLP, 2009 WL 2132439 (E.D.N.Y. July 10, 2009)

*Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577 (E.D. Mich. 2005) aff'd in part, rev'd in part and remanded, 465 F.3d 719 (6th Cir. 2006)

*Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006)

## **INTRODUCTION**

Plaintiffs, Mark Marusza ("Marusza") and Nancy Gucwa ("Gucwa") (collectively, "Plaintiffs"), have filed an action against defendant W. John Baker ("Dr. Baker"), a neuropsychologist, other doctors, and Accident Fund Insurance Company of America ("Accident Fund") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. through a scheme to fraudulently deny benefits due under Michigan's Worker's Disability Compensation Act, M.C.L § 418.101 *et seq*. ("WDCA"). As against Dr. Baker and the other doctors, the complaint also alleges state law claims of tortious interference with a contract or expected economic advantage.

Plaintiffs' complaint should be dismissed where it fails to state a claim under RICO because it does not sufficiently allege an injury to property or predicate acts. Upon dismissing the RICO claim, the court should decline to exercise jurisdiction over the state law claim. But in any event, the tortious interference claims should also be dismissed because the complaint fails to allege breach of contract or interference with a valid business expectancy, and further, it does not allege that Dr. Baker instigated any such breach. Finally, in the event that the court does not dismiss one or more of the claims against Dr. Baker, it should stay proceedings until Marusza's state worker's compensation hearing is complete.

1

## STATEMENT OF FACTS

On March 25, 2015, Plaintiffs filed a first amended complaint, alleging that Marusza suffered a traumatic brain injury arising out of an October 18, 2011 automobile accident and that Accident Fund denied this injury, fraudulently denied him worker's compensation benefits, and refused to pay Gucwa for attendant care services she provided to Marusza.  (Doc # 2, Complaint, ¶¶ 4, 13).

In Count I, RICO cause of action, with respect to Dr. Baker, the complaint alleges that he and Accident Fund, which provided worker's compensation insurance to Marusza's employer, agreed that Dr. Baker should conduct independent medical examinations of Marusza, and that Dr. Baker subsequently mailed reports from his examinations of Marusza to Accident Fund on April 27, 2012, September 7, 2012, May 1, 2014, and June 8, 2014.  (Doc # 2, Complaint, ¶¶ 4, 11, 17A).  Dr. Baker reported that he found no support for a diagnosis of cognitive impairment secondary to traumatic brain injury.  (*Id*., ¶ 27).  Plaintiffs allege that the reports were biased in favor of Accident Fund and did not honestly report on Marusza's condition.  (*Id*., ¶ 26).

The complaint alleges a scheme against Accident Fund wherein Accident Fund "committed mail fraud, wire fraud and conspiracy to defraud in a repeated and continuing pattern extending over years, against Michigan injured workers and providers of services to these injured workers."  (Doc # 2, Complaint, ¶ 13).  The

complaint asserts that the scheme consisted of, inter alia, fraudulently terminating or denying benefits and repeatedly hiring Dr. Baker and others to do examinations under M.C.L § 418.435 when Accident Fund knew that these doctors were highly likely to write reports finding that the claimant had no work-related disability, regardless of truth.  (*Id*.).

Relying on the allegations against Accident Fund, the complaint further alleged a scheme against Dr. Baker (and Dr. Harvey Ager) wherein, over a 20-year period, the doctors "committed mail fraud; wire fraud and conspiracy to defraud in a repeated and continuing pattern, against persons claiming injuries due to motor vehicle and other [sic] giving fraudulent testimony in workers compensation, no fault insurance and other types of cases."  (Doc # 2, Complaint, ¶ 14).  Plaintiffs allege that Dr. Baker "wrote hundreds of reports which were intentionally biased, unobjective, and dishonest, deliberately favoring whichever insurer hired him, knowing the insurer could use these reports as grounds to deny benefits." (*Id*., ¶ 11).

In Count III, Plaintiffs assert a claim of tortious interference with a contract and/or "expected economic advantage" against Dr. Baker and others, arguing that the doctors wrote deliberately biased and dishonest reports for Accident Fund upon which Accident Fund relied to deny worker's compensation benefits to Marusza,

which included payment for Gucwa's attendant care services.  (Doc # 2, Complaint, ¶ 60).

Dr. Baker now moves for dismissal under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

A motion for dismissal based on Rule 12(b)(6) tests whether a cognizable claim has been pled.  *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).  Courts are to construe complaints in the light most favorable to the non-movant and accept all factual allegations as true.  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  However, courts are not required to accept as true legal conclusions or unwarranted factual inferences in the complaint.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id*. at 679.

## ARGUMENT

**A.    The complaint fails to state a claim under RICO because Plaintiffs have not alleged an injury to business or property and, in any event, allegedly fraudulent IME reports do not constitute predicate acts under RICO and there is no allegation that anyone was deceived by the reports.**

Plaintiffs' complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim under RICO where the complaint does not sufficiently allege an injury to property or predicate acts.

### 1.    Controlling law.

RICO makes it a crime "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Brown v. Cassens Transp. Co*., 546 F.3d 347, 352 (6th Cir. 2008), quoting 18 U.S.C. § 1962(c).  To state a claim under this section, a plaintiff must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re ClassicStar Mare Lease Litig*., 727 F.3d 473, 483 (6th Cir. 2013). Additionally, 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Under that provision, the plaintiff must "detail[ ] an agreement to jointly undertake specific actions illegalized by RICO," other elements of a conspiracy claim, and

the underlying RICO violations.  *Pik-Coal Co. v. Big Rivers Elec. Corp*., 200 F.3d 884, 890 n.10 (6th Cir. 2000), citing *Craighead v. E.F. Hutton & Co., Inc*., 899 F.2d 485, 495 (6th Cir. 1990).

Participation in the conduct of an enterprise's affairs "requires proof that the defendant participated in the 'operation or management' of the enterprise." *Ouwinga v. Benistar 419 Plan Servs., Inc*., 694 F.3d 783, 792 (6th Cir. 2012) cert. denied, 133 S. Ct. 2735 (2013), citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." *Id.* at 793, quoting 18 U.S.C. § 1961(4).

"A pattern of racketeering activity requires at least two acts of racketeering activity."  *Heinrich v. Waiting Angels Adoption Servs., Inc*., 668 F.3d 393, 404 (6th Cir. 2012) (internal punctuation omitted).  The minimum two acts are not necessarily sufficient, and therefore, a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Ouwinga,* 694 F.3d at 795, quoting *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 237-39 (1989).

"Racketeering activity" is defined as "any act which is indictable under" 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). *Brown*, 546 F.3d at 352, citing 18 U.S.C. § 1961(1).  "Mail fraud consists

of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme. The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud." *Heinrich*, 668 F.3d at 404 (internal punctuation and citation omitted). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id*. (citation omitted). "A plaintiff must also demonstrate scienter to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Id*.

Finally, to establish a RICO violation, a plaintiff must show injury to his business or property. *Jackson v. Sedgwick Claims Mgmt. Serv's., Inc*., 731 F3d 556, 562 (6th Cir. 2013 en banc). 18 U.S.C. § 1964(c) provides in relevant part: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." The phrase 'by reason of' in § 1964(c) imposes a proximate cause requirement. *Jackson*, 731 F.3d 563.

**2.     Plaintiffs fail to allege an injury to business or property.**

Neither Marusza nor Gucwa can show an injury to business or property and thus they lack standing to bring a RICO claim against Dr. Baker.  Marusza alleges that he suffered a traumatic brain injury and that he was fraudulently denied worker's compensation benefits through a pattern of racketeering activity perpetrated by Dr. Baker and others.  (Doc. #2, Complaint, ¶¶ 6, 11, 14, 47).  The Sixth Circuit addressed this very issue in *Jackson*, 731 F.3d at 566, and plainly held that "racketeering activity leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to 'business or property' under RICO."[1]

Despite the clear directive of this holding, Marusza argues that *Jackson* should not apply to his claim against an independent medical examiner such as Dr. Baker.  (Doc. #2, Complaint, ¶ 6).  But the Sixth Circuit has spoken on this issue as well.  In *Brown v. Ajax Paving Indus., Inc*., 752 F.3d 656 (6th Cir. 2014), the plaintiff argued that *Jackson* applied only to claims against an employer but was inapplicable to claims against insurers, administrators, and doctors.  The Court rejected this position, stating that "[t]o limit *Jackson* to lawsuits against employers is to rewrite history."[2]  *Id*. at 658.  The Court reiterated that "expected workers'

---

[1] Plaintiffs' counsel in this case also represented the plaintiffs in *Jackson*.

[2] Plaintiffs' counsel in this case also represented the plaintiff in *Brown*.

compensation benefits stand outside the Act's perimeter because they flow from personal injuries. . . . [E]xtending the Act to expected workers' compensation benefits would clash with the States' customary control of their workers' compensation systems." *Id.* Thus, having failed to assert an injury to business or property, Marusza lacks standing to bring a RICO claim. Accordingly, Marusza's claim against Dr. Baker for a RICO violation should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

For all of the same reasons, Gucwa's RICO claim against Dr. Baker must also be dismissed because she, too, fails to assert an injury to property or business. Although Gucwa alleges injury from "non payment and delay of payment for the attendant care services she provided" (Doc # 2, Complaint, ¶ 47), Gucwa's claim arises out of the denial of worker's compensation benefits to Marusza because she expected payment out of his benefits. As held in *Brown*, "expected workers' compensation benefits stand outside the Act's perimeter because they flow from personal injuries. . . ." 752 F.3d at 658. Additionally, "[n]ot only are the injuries themselves excluded from recovery under RICO; pecuniary losses from the injuries, such as lost earnings, *medical expenses*, and attorney fees, are excluded as well." *Lewis v. Drouillard*, 788 F. Supp. 2d 567, 571 (E.D. Mich. 2011), citing *Evans v. Chicago*, 434 F.3d 916, 931 (7th Cir.2006). See also *LaMie v. Wright*, No. 1:12-CV-1299, 2014 WL 1686145, at *20 (W.D. Mich. Apr. 29, 2014) report

and recommendation adopted, No. 1:12-CV-1299, 2014 WL 3341587 (W.D. Mich. July 8, 2014), citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269 (1992) (Addressing proximate cause element of injury requirement, the court held that "[h]arm flowing from wrongs visited upon third parties will not support a RICO claim."). Moreover, *Jackson* instructed that "an award of benefits under a workers' compensation system and any dispute over those benefits are inextricably intertwined with a personal injury giving rise to the benefits." *Jackson*, 731 F.3d at 566. Gucwa is claiming benefits due and owing to Marusza and allowing her to prevail on a claim which Marusza cannot himself advance would allow her to "use[] RICO to collaterally attack an administrative scheme created by state law to supplant personal injury tort claims" – and would thus be contrary to the holding in *Jackson*. *Id.* at 566-67.

Finally, Dr. Baker agrees with the argument made by Accident Fund in its Motion to Dismiss. (Doc. #27, pp 11-12, Pg ID# 219-20). That is, Marusza's worker's compensation hearing to determine "all benefits due and owing" is scheduled to occur in June 2015. Until then, even if Gucwa did have any type of interest in Marusza's worker's compensation benefits by reason of the attendant care services she allegedly provided, it is only an expectancy interest and not a property interest. "A plaintiff does not have a property interest in workers' compensation benefits until there has been a final administrative determination that

10

such benefits are due." *Lewis*, 788 F. Supp. 2d at 571. "Injury to speculative or expectancy interests is not cognizable under RICO." *Id.*

Clearly then, neither Marusza nor Gucwa can show an injury to business or property and thus they lack standing to bring a RICO claim against Dr. Baker and their complaint should be dismissed under Fed. R. Civ. P. (12)(b)(6).

### 3.   Plaintiffs fail to state a claim under RICO because they have not alleged predicate acts.

The complaint alleges that Dr. Baker conducted independent medical examinations of Marusza, and that he subsequently mailed reports from his examinations of Marusza to Accident Fund on April 27, 2012, September 7, 2012, May 1, 2014, and June 8, 2014. (Doc. #2, Complaint, ¶¶ 4, 11, 17A). Dr. Baker reported that he found no support for a diagnosis of cognitive impairment secondary to traumatic brain injury. (*Id.*, ¶ 27). Plaintiffs allege that Dr. Baker's reports were biased in favor of Accident Fund and did not honestly report on Marusza's condition. (*Id.* ¶ 26). The mailing of allegedly fraudulent IME reports does not constitute a predicate act under RICO, and even if mailing the reports did amount to mail fraud, there is no allegation that anyone was deceived by the reports, and therefore, Plaintiffs fail to state a claim under RICO.

The district court opinion in *Jackson*, which was ultimately affirmed by the Sixth Circuit, explained that a violation of administrative duties created by the WDCA—even if fraudulent—does not amount to mail or wire fraud sufficient to

11

give rise to liability under RICO.  *Jackson v. Sedgwick Claims Mgmt. Servs., Inc*.,

No. 09-11529, 2010 WL 931864, at *20 (E.D. Mich. Mar. 11, 2010), citing *Ayres*

*v. General Motors Corp*., 234 F.3d 514, 521-22 (11th Cir. 2000) (dismissing RICO

claim based upon allegedly fraudulent violation of the National Traffic and Motor

Vehicle Safety Act).

Plaintiffs' claims here are similar to those in *Jackson,* where the plaintiffs

argued that the defendant employer, claims management company, and doctor

fraudulently breached duties owed to Plaintiffs under the WDCA, i.e., the duties to

fairly and honestly evaluate their claims, and that the fraudulent breach of these

duties amounted to mail and wire fraud sufficient to trigger RICO liability.

*Jackson*, 2010 WL 931864, at *15.  Specifically, the *Jackson* plaintiffs, like

Plaintiffs in this case, alleged that the defendant doctor conducted an IME, wrote a

fraudulent report of his findings, and mailed it to the claims management company,

which relied on the report to cut off the plaintiffs' benefits.

Relying on the 11th Circuit decision in *Ayres*, the district court in *Jackson*

concluded that the WDCA "was not meant to create the kind of duty, a breach of

which would create criminal liability or civil liability under RICO statutes."  *Id*. at

20, quoting *Ayres*, 234 F.3d at 522.  The court reasoned:

> [T]he WDCA establishes its own extensive array of administrative
> remedies for a violation of the duty to pay claims.  An injured
> employee does not have a private right of action under the WDCA; on
> the contrary, the WDCA abolished an employee's right to sue and

> required them to exclusively pursue its administrative remedies. See Mich. Comp. Laws § 418.131. Furthermore, the WDCA does not provide for criminal penalties for violations of the duties it imposes; on the contrary, the WDCA contains a strict limitation of liability that applies even where an employer disputes a claim in bad faith.

Thus, as in *Jackson*, Plaintiffs allegations here that Dr. Baker mailed fraudulent reports upon which Accident Fund relied to deny him benefits do not amount to mail fraud and cannot sustain a RICO claim.

Moreover, even if Dr. Baker's acts of mailing allegedly inaccurate reports of the results of several independent medical evaluations of Marusza and others do amount to mail fraud, such allegations here still fail to sustain a RICO claim because, as Accident Fund argues in its motion to dismiss, no one was deceived by this alleged fraud.  (See Doc #27, Accident Fund's Motion to Dismiss, pp 16-21, Pg ID# 224-29).

RICO claims of mail fraud require allegations of intent to deceive.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984).  As recognized by the concurring opinion in the first 6th Circuit *Jackson* case (see *Jackson v. Segwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466, 485 (6th Cir. 2012), reh'g en banc granted, opinion vacated, 731 F.3d 556 (6th Cir. 2013) (Batchelder J., concurring)), in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 650-54 (2008), the Supreme Court held that first-party reliance is not required in a civil RICO action, however, the Court clarified that "none of this is to say that a RICO

13

plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." *Id*. at 658 (emphasis in the original). Indeed, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Id*.

This concept is demonstrated in *McGee v. State Farm Mut. Auto. Ins. Co*., No. 08-CV-392 FB CLP, 2009 WL 2132439 (E.D.N.Y. July 10, 2009), the case cited in Accident Fund's brief. In *McGee*, the plaintiff doctor accused an insurer, two IME referral services, and several health care providers of conspiring to fraudulently deny him reimbursement for medical procedures he performed in a scheme analogous to the one alleged here by Plaintiffs. The district court determined that the doctor failed to show that anyone was deceived by the alleged scheme, explaining:

> In the conspiracy which [the plaintiff doctor] alleges . . . none of the defendants' conduct is calculated to deceive anyone. The Providers' allegedly falsified IME reports are not calculated to deceive State Farm because State Farm ordered the falsification in the first place. Neither are the reports calculated to deceive [the plaintiff]: he knows full well what his own patients' true condition is, and defendants' reports are not intended to convince him otherwise. Nor are the reports calculated to deceive [the plaintiff's] patients, who apparently do not even receive them, and who are aware of their own injuries in any event. In sum, while defendants' alleged conduct is dishonest and unfair, no one is intended to be duped or taken in. Thus, while this alleged scheme may violate some other state or federal law or constitute a breach of contract, it is not redressable under a mail-or wire-fraud theory.

14

*Id.* at *5-6.

The scheme alleged here by Plaintiffs fails for the same reasons. According to the complaint, Accident Fund deliberately uses various doctors, including Dr. Baker, to conduct examinations for workers compensation purposes, because Accident Fund expects that they will *not* give unbiased, objective and honest opinions, but rather, will write reports favorable to Accident Fund by falsely finding no or very limited work-related injury or disability, at which point, Accident Fund can deny benefits. (Doc # 2, Complaint, ¶¶ 9, 13-14). Thus, no one was deceived by this scheme: Dr. Baker's allegedly falsified IME reports are not calculated to deceive Accident Fund because Accident Fund expects that Dr. Baker will not find disability, which is why it requests that he conduct the IME the first place. Similarly, the reports have not deceived Marusza because he believes himself to be suffering from a traumatic brain injury. Accordingly, there is no allegation that anyone was deceived by Dr. Baker's alleged acts of mail fraud and Plaintiffs' RICO claims fail as a matter of law.

**B.** **Plaintiffs' state law tortious interference claims must be dismissed because Plaintiffs cannot show a breach of contract or valid expectancy, and they fail to allege that Dr. Baker instigated any such breach or interference.**

Plaintiffs allege that a false medical report from an independent medical examiner that leads to the denial of insurance benefits constitutes tortious

interference with a contract or tortious interference with a business expectancy under Michigan law. (Doc # 2, Complaint, ¶ 51). First of all, if this court dismisses the RICO claims against Dr. Baker, it should decline to exercise jurisdiction over this state law claim. "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. See 28 U.S.C. § 1367(c)(3). Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal citations omitted). There is no reason for this court to retain jurisdiction over the state law claim, which, like the alleged RICO claim, hinges on issues arising under Michigan's WDCA, and those issues are yet to be resolved by the Worker's Disability Compensation Board.

In any event, Plaintiffs' claims must be dismissed because Plaintiffs cannot show a breach of a contract or valid expectancy, and they fail to allege that Dr. Baker instigated any such breach or interference. The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005); *Dzierwa v Michigan Oil Co*, 152 Mich App 281, 287;

16

393 NW2d 610, 613 (1986).  To prove tortious interference with a contract, a

plaintiff must allege the intentional doing of a per se wrongful act or the doing of a

lawful act with malice and unjustified in law for the purpose of invading the

contractual rights of another.  *CMI Intern, Inc v. Intermet Intern Corp*, 251 Mich.

App. 125, 131; 649 N.W.2d 808 (2002), quoting *Feldman v. Green*, 138 Mich.

App. 360, 378; 360 N.W.2d 881 (1984).

Similarly, the elements of tortious interference with a business relationship

or expectancy are (1) the existence of a valid business relationship or expectancy

that is not necessarily predicated on an enforceable contract, (2) knowledge of the

relationship or expectancy on the part of the defendant interferer, (3) an intentional

interference by the defendant inducing or causing a breach or termination of the

relationship or expectancy, and (4) resulting damage to the party whose

relationship or expectancy was disrupted.  *Health Call of Detroit*, 268 Mich. App.

at 90.

In this case, Plaintiffs do not clearly identify any contract at issue or

otherwise.  There is presumably a contract between Marusza and Gucwa for

attendant care services, however, there is no allegation that the contractual

relationship between the two has been breached by either party.  Presumably,

Plaintiffs claim to be third party beneficiaries of Accident Fund's insurance

contract with Marusza's employer, from which they expect compensation in the

form of worker's compensation benefits.  But Plaintiffs cannot show breach of the insurance contract, a necessary element of tortious interference with a contract. *Health Call*, 268 Mich App at 89-90.  That is, Plaintiffs cannot show that Accident Fund improperly denied Marusza benefits to which he is supposedly entitled and with which Gucwa would be compensated for her attendant care services because there has not yet been a ruling on Marusza's claim by the Worker's Disability Compensation Board.  Accordingly, having failed to show a breach of contract, this claim fails as a matter of law.  Likewise, Plaintiffs cannot show interference with any "valid business relationship or expectancy," because again, whether Plaintiffs' expectancy of receiving benefits is valid depends on the outcome of the hearing that is scheduled for June 2015.

Moreover, the complaint does not allege that Dr. Baker instigated a breach of the insurance contract or that he intentionally interfered with any relationship or expectancy of the Plaintiffs which induced a breach of that expectancy.  To the contrary, as discussed above, Plaintiffs' 63-paragraph complaint alleges a conspiracy between Accident Fund and Dr. Baker (as well as other doctors) in which _Accident Fund_ deliberately requested reports from Dr. Baker, expecting that the reports would find no disability (and here, specifically, that the reports would find no evidence of a traumatic brain injury), for the specific purpose of denying

18

benefits to Marusza.[3]  Thus, if the complaint here does allege any breach of contract or expectancy, it is alleging that Accident Fund itself was responsible for any instigation of the breach.[4]  Accordingly, the state law tortious interference claims against Dr. Baker should be dismissed.

### C. If this court does not dismiss Plaintiffs' claims against Dr. Baker, the case should be stayed until Marusza's workers compensation proceedings are complete.

Dr. Baker agrees with Accident Fund's argument that, if the court does not dismiss any part of Plaintiffs' complaint against Dr. Baker, this case should be stayed until Marusza's worker's compensation proceedings are complete, under either the doctrine of primary jurisdiction or the *Burford*[5] abstention doctrine.  (See Accident Fund's Motion to Dismiss, Doc #27, pp 33-38, Pg ID# 241-246).

"The doctrine of primary jurisdiction arises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency."  *Consol. Rail Corp. v. Grand Trunk W. R. Co*., No. 13-

---

[3] The facts here thus differ from the case on which Plaintiffs rely, *Dubuc v. El-Magrabi*, 489 Mich. 869, 795 N.W.2d 593 (2011), which also involved an IME report containing allegedly false information.  In that case, however, there were no allegations that the plaintiff's employer and payer of benefits (Ford Motor Company) purposefully sent her to the defendant doctor expecting that he would make findings to prevent her from receiving benefits.

[4] Notably, a party to a contract cannot tortiously interfere with the contract, it can only breach the contract.  *See Dzierwa v. Michigan Oil Co*., 152 Mich. App. 281, 287-88; 393 N.W.2d 610 (1986).

[5] *Burford v. Sun Oil Co*., 319 U.S. 315 (1943).

2269, 2015 WL 1727306, at \*5 (6th Cir. Apr. 15, 2015). "The purpose of the doctrine of primary jurisdiction is to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions." *Id.* (internal quotations and citation omitted). Additionally, "a court must apply the doctrine of primary jurisdiction on a case-by-case basis, deferring to an administrative agency only when the reasons for the existence of the doctrine are present." *Id.* (internal quotations and citation omitted).

Additionally, the Sixth Circuit has instructed that, under the *Burford* abstention doctrine, "[w]hen a case presents an unanswered question of state law bearing on policy problems of substantial public import whose importance transcends the case at hand and when conflicting state and federal rulings on the question would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern, *Burford* says that a district court should stay its hand until the state courts have had an opportunity to weigh in on the matter." *Gray v. Bush*, 628 F.3d 779, 784 (6th Cir. 2010) (internal citations omitted). "The *Burford* doctrine thus tells federal courts *when* to exercise discretion (by considering whether a federal ruling might wreak havoc on a sensitive yet indeterminate area of state policy) and *how* to exercise that discretion (by avoiding immediate resolution of the state law issue)." *Id.* (emphasis in

original).  Under this abstention doctrine, a district court has the "option of staying the federal proceeding until the state court resolves the difficult question of state law bearing on policy problems of public import."  *Id*. at 785 (internal citations omitted).

As noted in Accident Fund's brief, a case from this district found a stay proper under both doctrines in similar circumstances.  In *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577 (E.D. Mich. 2005) aff'd in part, rev'd in part on other grounds and remanded, 465 F.3d 719 (6th Cir. 2006), the plaintiff employee brought an action against his employer, the worker's compensation insurer, an adjuster, and physician, alleging a violation RICO and intentional infliction of emotional distress.

Under the primary jurisdiction doctrine, the court found that it had jurisdiction over the RICO claims, but that the adjudication of the plaintiff's claims, like this case, "hinge, in part, upon whether Plaintiff is entitled to those [worker's compensation] benefits in the first instance."  *Moon*, 375 F. Supp. 2d at 586.  Importantly, Michigan's Worker's Disability Compensation Act, "a regulatory scheme of the Michigan legislature [,] commits the resolution of one's entitlement to workers' compensation benefits in the first instance to the special competence of the [Workers Disability Compensation Board]."  *Id*. Accordingly, "[g]iven the complicated medical issues underlying Plaintiff's entitlement to

21

workers' compensation benefits, the WDCB, rather than the Court, possesses the

necessary expertise and the specialized knowledge properly to resolve those

underlying issues and, thus, the ultimate issue of Plaintiff's entitlement to benefits.

Deferring to the WDCB's determination of a plaintiff's entitlement to workers'

compensation benefits in cases such as this would promote uniformity in such

determinations." *Id*. at 586-87.  The same result must follow here, where the

WDCB has yet to rule on Marusza's claim.[6]

Likewise, the *Moon* court determined that the *Burford* abstention doctrine

also applied because "an employee's entitlement to workers' compensation benefits

bears upon policy problems of . . . substantial public concern."  *Moon*, 375 F.

Supp. 2d at 589.  Conversely, "this federal forum would have minimal interest in

determining Plaintiff's entitlement to workers' compensation benefits."  *Id*. at 590.

Further:

> The determination of Plaintiff's entitlement to workers' compensation
> benefits in this federal forum would likely frustrate or undermine
> Michigan's workers' compensation scheme . . . . That administrative
> scheme is comprehensive, setting forth the nature and amount of the
> particular benefits to which it affords entitlement, the scope of any
> such entitlement, and the administrative and judicial processes for
> resolving any disputes regarding that entitlement. . . . [T]he
> determination of Plaintiff's entitlement to workers' compensation

---

[6] The court did note that "it is unclear whether the primary-jurisdiction doctrine
properly applies in favor of a state administrative agency where the claim at issue
arises under federal law and there is no competing federal forum," but found in any
event, that abstention under *Burford* was proper.  *Moon*, 375 F. Supp. 2d at 587.

benefits hinges upon complex medical issues. Given the expertise and specialized knowledge necessary to resolve such underlying issues properly, the determination of Plaintiff's entitlement to workers' compensation benefits in this federal forum may result in an adjudication that would be contrary to that of the WDCB.

*Id.*, p 589. Likewise here, the determination whether Marusza is entitled to benefits hinges in part on a complex medical issue, that is, whether he has a traumatic brain injury. This determination should be and will be made by the WDCB and therefore, this court, if it does not does dismiss the claims against Dr. Baker in their entirety, should stay this action until such time as the worker's compensation proceedings are complete.

## <u>CONCLUSION</u>

For these reasons, Defendant W. John Baker respectfully requests this Honorable Court grant his Motion to Dismiss under Fed. R. Civ. P 12(b)(6) on all counts against him and grant all such other relief to which he is entitled.

By: */s/*Michael D. Weaver
MICHAEL D. WEAVER (P43985)
Attorney for Defendant
Dr. W. John Baker
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4025
mweaver@plunkettcooney.com

Date:  May 1, 2015

## **CERTIFICATE OF SERVICE**

Michael D. Weaver, attorney with the law firm of PLUNKETT  COONEY, being first duly sworn, deposes and says that on the 1st day of May 2015, he caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record.

By:   /s/Michael D. Weaver
MICHAEL D. WEAVER
mweaver@plunkettcooney.com

Open.23644.51083.15375288-1

24