UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY GUCWA
and MARK MARUSZA,                   Case No. 2:15-cv-10815-AJT-APP

       Plaintiffs,                   Hon. Arthur J. Tarnow

vs.

DR. JEFFREY LAWLEY,
DR. HARVEY AGER,
DR. W. JOHN BAKER,
DR. BARRY RUBIN and
ACCIDENT FUND INSURANCE
COMPANY OF AMERICA,

       Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT
DR. W. JOHN BAKER'S MOTION TO DISMISS**

**CONCISE STATEMENT OF ISSUES PRESENTED**

**A. HAS NANCY GUCWA STATED A CLAIM UNDER RICO FOR INJURY
TO HER BUSINESS OR PROPERTY?**

**B. HAS NANCY GUCWA ALLEGED PREDICATE ACTS?**

**C. HAVE PLAINTIFFS ALLEGED THE MICHIGAN TORTS OF
INTERFERENCE WITH CONTRACT AND INTERFERENCE WITH
BUSINESS RELATIONSHIP?**

**D. SHOULD THIS CASE BE STAYED?**

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Allstate Insurance Company, et al, v Medical Evaluations, PC, et al,*
  USDC EDMI 13-cv-14682, dkt 37

*Bell Atl. Corp. v Twombly*, 550 US 544, 570 (2007)

*Bio-Medical Applications v Central States*, 656 F. 3d 277 (6th Cir 2011)

*Brown v Cassens Transport Co,* 546 F 3d 347 (6th Cir 2008), cert
  denied ___ US___, 130 S. Ct. 795 (2009)

*Brown v Cassens Transport Co,* 675 F3. 3d 946, 968 (6th Cir 2012)

*Dubuc v El-Magrabi, et al,* 489 Mich 869 (2011)

*Dubuc v El-Magrabi, et al*, MI Court of Appeals, No. 287756 (Opinion 9/24/10)

*Jackson v Sedgwick Claims Management Services*, 731 F3d 556
  (6th Cir 2013), cert den 134 S Ct 2133 (2014) ("Jackson II")

*Michaels Building Co. v Ameritrust Co*, 848 F. 2d 674, (6th Cir. 1988)

*Nawas v State Farm*, 4:13-cv-11158, doc. #31

*State Farm Mut Auto v Physiomatrix, et al*, USDC EDMI, 5:12-cv-11500, dkt 226

*Schipani v Ford Motor Co*, 102 Mich App 606 (1981)

*Trepel v Pontiac Osteopathic Hospital*, 135 Mich App 361 (1984)

Exhibits

1 - Draft of Second Amended Complaint

2 - *Dubuc v El-Magrabi, et al,* 489 Mich 869 (2011)

3 - *Dubuc v El-Magrabi, et al*, Michigan Court of Appeals, No. 287756 (Opinion 9/24/10)

i

# I. INTRODUCTION

On October 18, 2011, Mark Marusza was struck and injured by a motor vehicle while in the course and scope of employment in Michigan. Accident Fund provided worker's compensation insurance to his employer, First Amended Complaint ("FAC"), Dkt 2, ¶ 4. Accident Fund denied that he suffered a traumatic brain injury ("TBI") and refused to pay benefits for that injury. FAC, ¶¶ 4, 24.

Dr. W. John Baker is a neuropsychologist. Dr. Harvey Ager is a psychiatrist. The FAC alleges

> 14. THE SCHEME TO DEFRAUD OF DRS. W. JOHN BAKER and HARVEY AGER. For at least the past 20 years and continuing now, Baker and Ager committed mail fraud, wire fraud and conspiracy to defraud in a repeated and continuing pattern, against persons claiming injuries due to motor vehicle and other accidents, and or due to events at work, by writing fraudulent forensic reports and giving fraudulent testimony in workers compensation, no fault insurance and other types of cases. Their dishonest and deceptive practices, such as those set forth in detail in the claim of Nancy Gucwa, infra, were used by them in many other claims throughout the past 20 years.
> ***
> 25. At AF's direction, Marusza submitted to examinations by Drs. Ager and Baker. Drs. Ager and Baker found no accident-related TBI, and relying on these reports, AF denied workers compensation benefits for the TBI, including but not limited to the attendant care done by Gucwa.... [¶25 continues, describing in detail the alleged fraud committed by Dr. Baker.]

The FAC alleges that Accident Fund cited Marusza to Dr. Baker in 2012 and 2014 (Dkt 2, ¶17 A, B, J) and cited at least two other claimants in 2009 and 2011 (¶17 N). Baker wrote at least 4 reports on these three claimants, and gave a

1

deposition in the Marusza no fault case, all of which allegedly contain fraudulent statements.  (¶17 K, M, N; ¶10 B (3)).[1]

Nancy Gucwa is not an injured person.  She was not injured in the motor vehicle accident which gave rise to the injuries to Mark Marusza.   She provided attendant care to Marusza.  *Id*, ¶¶ 4, 24.

Plaintiffs incorporate here the arguments they present in their responses to the motions to dismiss brought by Accident Fund and Drs. Lawley, Rubin and Ager.

## II.  ARGUMENT

### Standard of Review

Pertinent to this court's resolution of the motions to dismiss brought by Accident Fund and the defendant doctors is the Supreme Court's holding that RICO's civil liability provisions should "be liberally construed to effectuate its remedial purpose.... The statute's 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima, S.P.R.L. v Imrex Co*, 473 US 479, 105 S Ct 3275, 3286, 87 L Ed 2d 346 (1985).

---

[1]     Marusza sued Auto Owners Ins for no fault benefits for the TBI. Auto Owners paid some benefits and has intervened in the pending workers compensation case to recover the money it paid, because in Michigan no fault insurance is secondary to workers compensation insurance.

Each count of this suit should survive each defendant's rule 12(b)(6) motion to dismiss because plaintiffs have *plausibly* pled all the material elements entitling them to relief. *Scheid v Fanny Farmer Candy Shops, Inc,* 859 F2d 434 (6th Cir 1988). The standard requires not encyclopedic pleading but plausible pleading: a plaintiff must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550 US 544, 570 (2007).

### A. NANCY GUCWA HAS ALLEGED AN INJURY TO HER "BUSINESS OR PROPERTY"

Dr. Baker argues that *Jackson v Sedgwick Claims Management Services*, 731 F3d 556 (6th Cir 2013), cert denied, 134 S.Ct. 2133 (2014) ("*Jackson II*"), requires dismissal of Gucwa's RICO claim. *Jackson II* held that an *injured person* could not bring a RICO claim because his claim was for his "personal injury" damages, and such a claim was not an injury to "business or property" as required by RICO, 18 U.S.C. §1964(c).

*Jackson II* does not require dismissal of Gucwa's claim because it bars only a claim brought by the injured person. Gucwa is not the injured person. She is a care provider, suing for her property interest in her bill for services rendered.

This court has twice ruled in no fault auto insurance cases that a care provider's or insurer's RICO claim is not barred by *Jackson II* because that case only bars a

3

claim by an injured person, and insurers and care providers are not injured persons. These two rulings held that insurers and care providers are suing for injury to their "business or property," not for "personal injury." Similarly, Gucwa's claim is not for her personal injury but for damages to her business or property interest in her bill for services rendered.

In *State Farm Mutual Auto. Ins. Co v Physiomatrix, et al*, USDC EDMI, 5:12-cv-11500, dkt 226, Opinion and Order Denying Motions to Dismiss, this court, the Hon. John O'Meara presiding, held that *Jackson II*, supra, did not apply, and denied no-fault insurer State Farm's motion to dismiss the clinics' RICO claims.

> The Clinics argue that *they* have not suffered a personal injury for which they are seeking compensation. Rather, they are seeking compensation for medical services performed, or "lost income." State Farm rejoins that, if the court accepts the clinic's argument, it would essentially allow the clinics to recover no fault medical benefits under RICO that their patients (State Farm's insureds) could not. This may be true, but State Farm has not cited any legal authority that such an outcome is contrary to law. See *Jackson*, 731 F. 3d at 569-70 ("Long before this case, courts recognized that the 'business or property' limitation in §1964(c) created a distinction between compensable and non-compensable injuries that some might consider arbitrary.").
>
> Although no fault benefits are at issue, the nature of the Clinic's injury is different from the nature of the insureds' injuries. The Clinics have provided services for which they are being paid; this is more properly characterized as a "business" rather than a "personal" injury....The court finds that *Jackson* does not apply to bar the Clinics' claims."

Like the Clinics, Nancy Gucwa suffered injury to property - her claim for services -

when that claim was allegedly fraudulently denied.

Similarly, in *Allstate Insurance Company, et al, v Medical Evaluations, PC, et al,* USDC EDMI 13-cv-14682, Hon. Matthew Leitman, this court held that a party to a no fault insurance dispute could invoke RICO despite *Jackson II*.  The court endorsed the reasoning in *State Farm Mut. Auto.  Ins. Co v Physiomatrix, et al.*

Dr. Baker seeks to *expand* the *Jackson II* decision to cover RICO claims brought by a non-employee.  Dr. Baker has provided no reason and no authority to expand it.

## B.  NANCY GUCWA ALLEGED PREDICATE ACTS

Dr. Baker asserts:

> The mailing of allegedly fraudulent IME reports does not constitute a predicate act under RICO...  (Brief 11)

This is astonishing.  It is akin to saying, "theft is not a crime."

The mail fraud statute, 18 U.S.C. §1341, prohibits obtaining money by fraud, and that is what Gucwa alleged: Baker participated in a scheme to defraud her via a scheme which used the mails.  This is classic mail fraud.

Gucwa is as much a victim as the clinics in *State Farm v Physiomatrix*.  The court held the clinics properly alleged RICO violation; this court should hold the same here.

Dr. Baker asserts plaintiffs' claims premised on mail and wire fraud fail because RICO requires that someone be "deceived by the alleged conduct." Brief 16. There is no such requirement. The Sixth Circuit in *Brown et al v Cassens Transport, et al*, 546 F3d. 347, 351 and 356ff (2008) held that "reliance is not an element of a civil RICO fraud claim." No subsequent decision of the Sixth Circuit reversed this holding, and it remains law within the circuit.

*Bridge v Phoenix Bond & Indemnity Co*, 553 US 649, 128 S Ct 2131 (2008), and *Brown* also made clear that if plaintiffs plausibly allege they were proximately injured by a fraudulent scheme, they have pled proximate cause, regardless of whether the scheme employed deception and reliance. *Brown* held:

> Plaintiffs have sufficiently pleaded that the defendants' fraud was directly related to and was the proximate cause of their injuries as required by 18 U.S.C. §1964(c) under *Holmes* [*v Securities Investor Protection Corp*, 503 US 258] at 268, 112 S. Ct. 1311, and *Anza* [*v Ideal Steel Supply*, 547 US 451 (2006)], 547 US at 456-61, 126 S. Ct. 1991. Accepting the facts as recited in the complaint, the defendants' fraudulent acts were a "substantial and foreseeable cause" of the injuries alleged by the plaintiffs: the deprivation of their worker's compensation benefits and expenses for attorney fees and medical care. *Trollinger v Tyson Foods, Inc*. 370 F 3d 602, 615 (6th Cir 2004)....

*Brown*, id, 357.

The allegations in this case are indistinguishable from those in *Brown*, for purposes of determining whether plaintiffs have pled proximate cause; plaintiffs in

both cases alleged a workers compensation insurer/self-insurer conspired with examiners to issue fraudulent reports which the insurer cited as grounds to deny benefits before litigation began, and intended to use after litigation began to deceive the workers compensation system.  Here Gucwa alleged defendants conspired to fraudulently deprive her of payment for services and benefits by means of fraudulent reports.  Because she made allegations like those in *Brown,*[2] it is irrelevant "no one was deceived by the alleged conduct."

Dr. Baker argues,

> ....in *Bridge v Phoenix Bond & Indemnity Co*, 553 U.S. 639, 650-54 (2008), the Supreme Court held that first-party reliance is not required in a civil RICO action, however, the Court clarified that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that someone relied on the defendant's misrepresentations."  Id, at 658 (emphasis in the original. Indeed, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."  Id.

The so-called "clarification" in *Bridge* is dictum.  It was musing by the court *after* it held first party reliance is not an element of RICO.  The "clarification" was dictum because it was "not necessary to the holding."  *United States v Stevenson,* 676 F3d 557, 562 (6th Cir 2012) .  Also, the court's musing is contrary to its holding that a

---

[2]    First Amended Complaint, dkt 2, ¶¶ 9 ("Accident Fund cited their [examiners'] reports as ground to deny payments for services..."); 13 K (Accident Fund "citing the reports by the foregoing persons as grounds to deny or terminate benefits.").

"person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on the representation."   *Bridge*, 128 S. Ct. 2131, 2139.

Dr. Baker discussed at length *McGee v State Farm Mut.* 08-CV-392 (ED NY 2009).   Brief 14.   *McGee* does not even discuss *Bridge*, supra, and is therefore worthless as guidance, because *Bridge* resolved the reliance issue.

Moreover, the Supreme Court has held that a scheme to commit mail fraud *does not require misrepresentation, let alone reliance on a misrepresentation*.   In *Carpenter v United States*, 484 U.S. 19, 108 S. Ct. 2875 (1987), the Supreme Court held mail fraud included an employee's misappropriation of his employer's confidential information for gain; the scheme involved dishonesty but no misrepresentation.

Also, a mailing does not have to contain any fraudulent statements to constitute a predicate act of mail fraud; it is sufficient if an innocent mailing is made in furtherance of the scheme to defraud.   *United States v DeCastris*, 798 F2d 261 (7th Cir 1989); *United States v Vardell,* 760 F2d 189, 191 (8th Cir 1985); *United States v Reid*, 533 F2d 1255 (DC Cir 1976).

Plaintiffs will be filing a motion for leave to file a Second Amended Complaint (see draft, Exhibit 1), alleging defendants used fraudulent reports not only to deny benefits to care providers and compensation claimants, *but also to deceive the*

8

*Workers Compensation Agency, magistrates and appellate bodies*.      Plaintiffs will allege in new ¶14 B that Accident Fund and its examiners used fraudulent reports to deceive the Agency before litigation, and during litigation to deceive workers compensation magistrates and appellate bodies.

Before litigation was filed, Accident Fund intended to and did deceive the Agency by mailing to it fraudulent Notices of Dispute (a form which an insurer must file, stating the grounds for benefit denial).   Accident Fund cited defendants' fraudulent reports as grounds, and the Agency, deceived as to the true reason for denial, took no action.

After litigation began, Accident Fund mailed Notices of Intent to the Agency announcing Accident Fund's intention to submit into evidence at trial the examiners' fraudulent reports.   During litigation, Accident Fund would submit these reports into evidence, to deceive a magistrate and appellate bodies.[3]

---

[3]           14.  B.  DEFENDANTS' INTENT TO DECEIVE.

(1).  Reports and Testimony Based on Reports.

(a) Biased and Dishonest Reports.  As part of the scheme to defraud, Accident Fund hired the defendant doctors to examine allegedly injured persons, to write dishonest, biased and otherwise fraudulent reports, and if needed to give dishonest testimony based on the reports, all to deceive the Workers' Compensation Agency, its magistrates, and appellate bodies in the Michigan workers compensation system.  The doctors conducted such examinations, wrote such reports and gave such testimony in claims and

9

cases involving workers compensation insurance, no fault insurance, third party liability and disability insurance, with all defendants

(I) knowing the insurers might or would rely on the reports, in that the insurers would cite the reports to a claimant and or to the Workers Compensation Agency, as grounds to deny or terminate benefits before litigation began, and

(ii) intending to submit the reports into evidence at a hearing, to deceive a trier of fact (in a workers compensation case, a magistrate; in a civil case, a judge or jury) and appellate bodies or courts after litigation began; the examiners knew and intended that the insurer through its lawyer would present their reports and testimony to a trier of fact or appellate body, and the examiners and insurer knew and intended that the trier of fact, court or appellate court or body might rely on the fraudulent, dishonest and biased reports or testimony to deny benefits to a claimant.

(b)  Material Omissions. The examiners were under a duty not to omit material facts from their reports, and to discuss in their reports all facts they knew about which were material to whether a claimant had suffered or was suffering the injury alleged.  In their reports they frequently omitted material facts and omitted to discuss material facts contrary to their opinions, as alleged, for example in ¶ 26 B (in "his report of April 27, 2012, and on information and belief in hundreds of reports in other cases stretching over decades, Baker dishonestly failed to disclose that on some of the tests in his neuropsychological assessment he did not use either the scoring system and norms which the manufacturer/developer provided with the test or a scoring system and norms for that test from a generally accepted compendium of scoring systems and norms.  Because Baker did not disclose, a reader of his report would have no way of knowing he had not used a standard scoring system and norms.  For some tests, Baker also used for decades scoring systems and or norms which were non-published and or non-peer-reviewed, and did not disclose that fact; these acts were material, misleading and deliberate omissions....").  See also ¶¶ 27 (material and misleading omissions by Baker); 31 A, C (material omissions by Dr. Ager).  The examiners made false statements in their reports.  See, for example, ¶ 17 I(4) (alleging Dr. Ager reported with extremely high frequency that the

10

examinee had a "histrionic" and "dependent personality" as "a product of childhood" and likely a "somataform" disorder coupled with "secondary gain" behavior; this cookie-cutter pattern in his reports is evidence that he committed systematic fraud); .  The material omissions and false statements may also have been intended by the examiners to mislead, and may have mislead, the insurers which hired them, and magistrates and appellate bodies in the Michigan workers compensation system, or triers of fact and appellate bodies in no fault and other cases.

(c)  Wilful Blindness.  Accident Fund also committed wilful blindness by failing to determine that the examiners were biased or dishonest despite having reason to believe they may be biased or dishonest, and by failing to vet the examiners for honesty before hiring them.   The fraudulent reports of defendant doctors concerning Marusza are identified in ¶17, Predicate Acts.

(2)  Notice of Dispute. Accident Fund regularly used the fraudulent reports to deceive the Worker's Compensation Agency as to the true reasons for the termination or denial of benefits, both before and after Marusza began litigation.  Before litigation, Accident Fund would file a Notice of Dispute, form 107, as it did in the claim of Mark Marusza to dispute his benefits for his TBI, low back, neck and shoulder injuries.  A rule promulgated under the WDCA required Accident Fund to file the Notice of Dispute and state the grounds of the dispute "if the right of the injured ...to compensation is disputed," R 408.33, Rule 3(1).  Accident Fund frequently stated in the Notices of Dispute, as it did in the forms it filed with the Agency in the claim of Marusza, that benefits were denied or terminated "based on an independent medical examination by Dr. X."  In Marusza's worker's compensation claim, X was Drs. Lawley, Ager, and Baker; for three Notices of Dispute citing to the Agency reports from these examiners, see ¶17 S.  Had Accident Fund stated the truth in the Notice of Dispute, "Benefits were terminated based on a fraudulent report by Dr. X," the Agency would likely have punished Accident Fund.    Because Accident Fund lied to the Agency in its Notices of Dispute, the Agency relied on the reasons given and took no action against Accident Fund.

(3)  Notice of Intent.  Rule 5(1) of the Worker's Compensation Board of

11

These pleadings should not be needed because *Brown, id*, held that reliance/deception is not element of a RICO civil mail fraud claim; plaintiffs seek to add the allegations just in case the Sixth Circuit or the Supreme Court holds such allegations *are* needed.

### C.  PLAINTIFFS HAVE ALLEGED DR. BAKER COMMITTED THE MICHIGAN TORTS OF INTERFERENCE WITH CONTRACT AND INTERFERENCE WITH BUSINESS RELATIONSHIP/ EXPECTANCY

**Existence of Contract and Business Relationship/Expectancy.**

**A. Marusza.**  Dr. Baker asserts, "Plaintiffs do not clearly identify any contract at issue or otherwise."  Brief 16-17.   This not true because the FAC alleges "Accident Fund ... *provided workers' compensation insurance to his employer*."  FAC, ¶ 4.   Thus the FAC identified a "contract at issue," Accident Fund's workers compensation contract of insurance with Marusza's employer.

---

Magistrate General Rules, R418.55, Admission of records, reports, memorandum and data compilation, provides "Not less than 42 days before a hearing, the party intending to introduce the record, memorandum, report of data compilation shall furnish copies to all parties and send a notice of intent to the magistrate."  Pursuant to this rule, it was the frequent practice of Accident Fund in workers compensation litigation to mail to the Agency, starting in at least 2005 and continuing today, Notices of Intent, announcing to the Board of Magistrates its intent to submit into evidence reports from defendant examiners, intending to deceive the magistrate and appellate bodies by means of the fraudulent reports.

Marusza may sue Dr. Baker for tortious interference with insurance coverage his employer bought, *Dubuc v El-Magrabi, et al,* 489 Mich 689 (2011).  The Michigan Supreme Court unanimously held that a Ford Motor Company employee seeking benefits for his brain and orthopedic injuries, under a disability insurance contract Ford bought from Unicare, may sue a medical examiner and a medical examiner broker for tortious interference with Ford's contract with Unicare.  This is a situation identical to that here, where Marusza's employer bought workers compensation insurance from Accident Fund, and Accident Fund cited examiner reports as ground to deny benefits for Marusza's TBI.

The Supreme Court said, "When the complaint allegations are viewed in a light most favorable to the plaintiff, she did allege an unjustified instigation of the breach by the defendants."  The court reversed the Michigan Court of Appeals, No. 287756 (Opinion 9/24/10), and in effect adopted the Court of Appeals dissent in that case, which stated plaintiff had pled tortious interference with contract.   The *Dubuc* Supreme Court order and the Court of Appeals dissent are Exhibits 2 and 3, for the court's convenience.

**B.  Gucwa**.  Gucwa's claim is either for interference with contract or for interference with an existing business relationship or an expectancy, *Cedroni Assocs v Tomblinson, Harburn Assocs, Architects & Planners, Inc,* 492 Mich 40, 45 (2012);

13

*Health Call v Atrium Home & Health Care,* 268 Mich App 83 (2005); *Trepel v*

*Pontiac Osteopathic Hospital,* 135 Mich App 361 (1984); *Schipani v Ford Motor Co*,

102 Mich App 606 (1981).

Accident Fund had been in a business relationship with Marusza and Gucwa

before it denied benefits for the TBI.  In 2011 and 2012 Accident Fund paid Gucwa

for her attendant care services arising from Marusza's severe orthopedic injuries

(cervical spine, six rib fractures, comminuted clavicle fracture, rim rent tear of

shoulder); also, from the time of the accident to the present, Accident Fund has paid

Marusza disability benefits.  The First Amended Complaint clearly implies that an

agreement existed between Marusza and Gucwa for the provision by Gucwa of

attendant care services, and the proposed Second Amended Complaint will explicitly

state that such an agreement existed.[4]

---

[4]     From draft Second Amended Complaint, exhibit 1:
> 22.  **In 2011 and 2012 Accident Fund paid Gucwa for her attendant care services arising from Marusza's severe orthopedic injuries (cervical spine, six rib fractures, comminuted clavicle fracture, rim rent tear of shoulder.  In 2012 to the present, Mark Marusza hired Nancy Gucwa to provide, and Gucwa provided,** attendant care services to Mark Marusza primarily as a result of the traumatic brain injury ("TBI") he suffered in the accident described in paragraph 10, and to a lesser extent as a result of injuries and surgeries to the neck and shoulders.   Marusza's treating doctors prescribed attendant care. Nancy Gucwa submitted attendant care claims to AF.  AF in bad faith refused to pay them, as a result of which

14

**Instigation of Breach.**   Dr. Baker next argues, "....the complaint does not allege that Dr. Baker instigated a breach of the insurance contract or that he intentionally interfered with any relationship or expectancy of the Plaintiffs which induced a breach of that expectancy."  Brief 18.  But the First Amended Complaint *does* allege intentional interference with the insurance coverage and expectancy of Gucwa and Marusza, and many other injured people, by Baker's systematic production of fraudulent reports *so that Accident Fund and other insurers could cite them as grounds to cut off or deny benefits*:

•     ¶4 ("AF cited and relied on the reports of Drs. Harvey Ager, J. Barry Rubin and W. John Baker in support of these denials");

•     ¶11A ( "He wrote hundreds of reports which were intentionally biased, unobjective, and dishonest, deliberately favoring whichever insurer hired him, knowing the insurer could use these reports as grounds to deny benefits.  He wrote multiple such reports concerning the condition of Mark Marusza, whose

_____

Gucwa suffered injury to her business or property.  **Under MCL 418.847 a care provider is a "party in interest."   A care provider may file its own litigation to collect its bill, by filing a Form 104-B with the Michigan Worker's Compensation Agency, pursuant to MCL 418.847, and Gucwa has done so.**

15

brain injury gave rise to most of the attendant care services provided by plaintiff Nancy Gucwa.");

- ¶¶14; 17 C and K;

- ¶26 A: Baker "did not intend to write a report objectively and honestly reporting on Marusza's condition, but intended to write a biased report favoring the Accident Fund, because his all or nearly all his income from his neuropsychological practice came from writing reports for insurers or their lawyers, and he wanted to keep them happy, by giving them a report they could cite as grounds to deny benefits";

- ¶51 ("'Plaintiffs incorporate all allegations of this complaint"); and

- ¶61 ("The fraudulent, biased and dishonest reports of Ager, Lawley, Rubin and Baker proximately caused AF to deny to Gucwa payment for attendant care services she provided, in an amount exceeding $150,000.00, and to deny to Marusza payment for hospital bills, attendant care services, medical care and medications, in an amount exceeding $100,000.00.").

The Michigan Supreme Court found similar allegations in *Dubuc*, supra, alleged tortious interference by a medical examiner with a person's receipt of benefits under an insurance contract. *Dubuc* should prompt this court to reject Dr. Baker's arguments.

Dr. Baker asserts he could not have instigated the breach because plaintiff alleges Accident Fund obtained a report from him

> for the specific purpose of denying benefits to Marusza. FN 3. Thus, if the complaint here does allege any breach of contract or expectancy, it is alleging that Accident Fund itself was responsible for any instigation of the breach. FN 4.
>
>> FN 3: The facts here thus differ from the case on which Plaintiffs rely, *Dubuc v El-Magrabi*, 489 Mich 869, 795 NW2d 593 (2011), which also involved an IME report containing allegedly false information. In that case, however, there were no allegations that the plaintiff's employer and payer of benefits (Ford Motor Company) purposely sent her to the defendant doctor expecting that he would make findings to prevent her from receiving benefits.
>> FN 4: Notably, a party to a contract cannot tortiously interfere with the contract, it can only breach the contract. See *Dzierwa v Michigan Oil Co,* 152 Mich App 281, 287-88 (1986). Brief 18-19.

These arguments miss the essential point in a claim for tortious interference with contract or business relationship. A plaintiff must allege that a person *outside* the relationship instigated the breach, and plaintiffs here did just that. Plaintiffs alleged Baker and Ager proximately caused the breach by providing essential ammunition. Accident Fund did not act alone when it denied benefits for the TBI; it relied on and cited Dr. Baker's and Dr. Ager's 2012 reports.

If Drs. Baker and Ager can prove at trial that Accident Fund would have denied benefits for the TBI regardless of the reports, then plaintiffs could not prove the reports instigated the breach. But for purposes of a Rule 12(b)(6) motion, plaintiffs

have plausibly alleged the reports instigated the breach.

Plaintiffs' claims are distinguishable from those in *Dzierwa,* on which Dr. Baker relies. In *Dzierwa*, plaintiff did not allege that a party *outside* the contracting party instigated a breach. Plaintiff alleged only that the chief officer and owner of the contracting party - in effect, the corporation itself - tortiously instigated a breach. The court held that the person who allegedly instigated the breach was the corporation's chief officer and owner of the contracting party; *he was, for all purposes, the corporation.*[5]

**Existence of Breach.** Dr. Baker argues, "Plaintiffs cannot show that Accident Fund improperly denied Marusza benefits to which he is supposedly entitled and with which Gucwa would be compensated for her attendant care services because there has not yet been a ruling on Marusza's claim by the Worker's Disability Compensation Board." Brief 18. The argument is equivalent to Dr. El-Magrabi in *Dubuc* asserting that Dubuc cannot show that Unicare improperly denied benefits until Dubuc sues Unicare and the Michigan legal system determines she was entitled to benefits despite the doctor's fraudulent report.

In *Dubuc*, as here, the tort was complete when the insurer denied benefits and

---

[5]    "Smith *is* the company on these facts." (Emphasis by the court). 152 Mich App 287-288. Here, Dr. Baker is outside the corporation. That alone distinguishes *Dzierwa*.

cited the examiner's report as grounds for doing so.  The denial immediately caused loss of benefits.   Dubuc could sue immediately, without having to wait for the Michigan legal system to decide the underlying insurance claim.

Dr. Baker has not cited any Michigan law to the contrary.  He has not cited any authority that the Michigan tort requires that the alleged victim must first sue the insurer who cited the interferer's report as grounds to deny benefits.  *Dubuc* stands for the contrary proposition and is controlling.

Also, Dr. Baker's argument wrongly assumes a workers compensation insurer's liability for benefits *requires litigation* before an insurer must pay benefits, an argument which turns the workers compensation scheme on its head.  The Michigan system was designed for prompt and voluntary payment after injury *without litigation*.  The system requires prompt and voluntary payment after injury, MCL 418.801(1) ("Compensation shall be paid promptly and directly to the person entitled thereto and shall become due and payable on the fourteenth day after the employer has notice or knowledge of the disability or death...").  Dr. Baker's argument perverts the WDCA, which has "as its primary goal the delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs."  *McAvoy v H. B. Sherman Co,* 401 Mich 419, 437, 258 NW2d 414 (1977).  *McAvoy* also condemned delay in payment of benefits due to employer denials and appeals in legitimate claims,

19

which work a "profound injustice" on injured workers. *Id* at 438. A fraudulent report

which prompts denial of benefits corrupts the system.

**Summary of Argument**.   Both Marusza and Gucwa have properly alleged

tortious interference.  As the dissent in *Dubuc*, supra, stated:

> The elements of tortious interference with contract are: "(1) a contract, (2) a
> breach, and (3) instigation of the breach without justification by the
> defendant." *Wood v Herndon,* 186 Mich App 495, 499 (1990) (quotations and
> citations omitted).  In order to prove such a claim, plaintiff must show "the
> intentional doing of a per so wrongful act or the doing of a lawful with malice
> and unjustified in law for the purpose of invading the contractual rights or
> business relationship of another." *Id*.  Certainly, knowingly making false
> statements to a contracting party about the other contracting party, where the
> statements bear directly on the contract, is sufficient to show malice, or at least
> a lack of justification.

This statement is a template which fits neatly here.   Marusza, like Dubuc, was the

beneficiary of an insurance contract his employer purchased.   Marusza, like Dubuc,

asserts a medical examiner lied in his report and as a result the insurer cited the report

as ground to deny benefits.     Likewise, Gucwa has a claim for interference with

contract, business relationship or expectancy.

## D.  THIS COURT SHOULD RETAIN JURISDICTION

Dr. Baker argues that "if this court dismisses the RICO claims against Dr.

Baker, it should decline to exercise jurisdiction over this state law claim" of tortious

interference, Brief 16.  Dr. Baker points out this court has said, "Residual jurisdiction

should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v Harrison Piping Supply,* 465 F. 3d 719, 729 (6th Cir 2006), Brief 16.

*Moon's* advice fits here precisely.   The interests of judicial economy and the avoidance of multiplicity of litigation warrant this court retaining jurisdiction over the tort claim even if it dismisses the RICO claims.   If the court dismisses the RICO claims, the Medicare Secondary Payer Act ("MSPA") claim remains, and that claim overlaps the tort claims, as both involve Accident Fund's liability for Marusza's alleged TBI, which in turn involves the issue of whether Marusza actually suffered from a TBI, and resolution of *that* issue involves whether examiners Baker, Ager and Rubin produced dishonest reports concerning Marusza's alleged TBI.   These issues are common to both the tort and MSPA claims and are central to both claims.

### E.  THIS CASE SHOULD NOT BE STAYED UNDER EITHER THE PRIMARY JURISDICTION OR *BURFORD* ABSTENTION DOCTRINE

Dr. Baker asks this court to stay this case until final conclusion of the worker's compensation case.   This case should not be stayed for any one of several reasons.

First, the Sixth Circuit and this court have permitted MSPA claims to proceed against insurers even though there has been no determination of the underlying state

21

claims against the insurers.   *Bio-Medical Applications v Central States*, 656 F. 3d

277 (6th Cir 2011), *Michigan Spine & Brain Surgeons, PLLC, v State Farm Mut Auto

Ins Co,* 758 F 3d 787 (6th Cir 2014), *Nawas v State Farm*, 4:13-cv-11158, doc. #31.

Marusza's MSPA claim cannot be stayed under this authority.

Second, because the MSPA claim must proceed, it would be senseless to stay

the RICO claim.

Third, there is no reason to adopt one rule for MSPA claims and another for

RICO claims, where both involve underlying state claims against insurers.

Fourth, *Brown v Cassens Transport,* 675 F.3d 946, 955-957 (6th Cir 2012)

rejected defendants' request for stay under the *Burford* abstention doctrine, and their

request for stay under the filed-rate doctrine (concerning whether litigation should be

stayed pending the outcome of an underlying claim pending before a state agency).

*Brown* was dismissed by stipulation following *Jackson II*, but because *Brown's*

rejection of a stay was not overruled by *Jackson II*, that rejection remains controlling

precedent in this circuit, and requires denial of Dr. Baker's request for stay.[6]

---

[6]      Accident Fund and Dr. Baker cite *Moon v Harrison Piping Supply,*
375 F. Supp. 2d 577 (ED MI 2005), aff'd in part, rev'd in part on
other grounds and remanded, 465 F 3d 719 (6th Cir 2006), as authority
for stay.   It is not, because: (1) *Brown v Cassens Transport*, supra,
effectively overruled the *Moon* holding concerning stay; (2) *Moon*
involved a scheme which alleged a "single objective" of depriving
one man of his benefits, while plaintiffs here allege a scheme

Fifth, *Jackson I* gave persuasive reasons not to stay case, and those reasons remain persuasive even though *Jackson I* was vacated.

Sixth, final determination of the worker's compensation case could easily take eight to ten years due to the complexity of that case, the fact that the trial now set for August 27 could be spread over half a year (rarely do magistrates hear complex cases on consecutive days), the existence of three appeal layers (Appellate Commission, Court of Appeals, Supreme Court), and the frequent occurrence in Michigan workers' compensation practice of remands among those layers and the magistrate, followed by appeals from remands.

For any one of these reasons, this case should not be stayed.

---

involving many victims, and a scheme which continues right now and into the future, so that this court should exercise its right to get to the bottom of this alleged scheme; and (3) this case involves an MSPA claim, which cannot be stayed.

23

## RELIEF REQUESTED

Plaintiffs request this court deny Dr. Baker's motions.

Respectfully submitted,

MARSHALL LASSER, P.C.

/s/ Marshall Lasser
MARSHALL LASSER (P25573)
Attorney for Plaintiffs
P.O. Box 2579
Southfield, MI 48037
(248) 647-7722
mlasserlaw@aol.com

Dated:  June 12, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2015, I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system which will send notification of such

filing to all counsel of record.

/s/ Marshall Lasser
Marshall Lasser (P25573)
MARSHALL LASSER, P.C.
Attorney for Plaintiffs
P.O. Box 2579
Southfield, MI 48037
(248) 647-7722
mlasserlaw@aol.com

24