UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY GUCWA AND MARK MARUSZA,

        Plaintiffs,

v.

DR. JEFFREY LAWLEY, ET AL.,

        Defendants.

_____/

Case No. 15-10815

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING DEFENDANT DR. BARRY RUBIN'S MOTION FOR SANCTIONS; AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDMENT TO THE SECOND AMENDED COMPLAINT**

In October 2011, Mark Marusza suffered severe injuries to, among other things, his brain, shoulders, cervical spine, and ribs, when he was struck by an SUV while walking through an intersection during the course and scope of his employment. Accident Fund Insurance Company, the workers' compensation administrator, refused to pay for some of Marusza's treatment, and for attendant care services provided by Marusza's girlfriend, Nancy Gucwa, after it reviewed a series of evaluation reports written by Doctors Ager, Baker, Rubin, and Lawley. After the Workers' Compensation Board Magistrate ordered Accident Fund to pay Marusza, Plaintiffs filed this lawsuit against Accident Fund and the five doctor defendants, alleging a conspiracy, pursuant to which Accident Fund hired the

doctors to write fraudulent reports for the purpose of denying claimants workers' compensation benefits, in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Plaintiffs also bring claims of tortious interference with contract or expectancy; liability under the Medicare Secondary Payer Act ("MSPA"); and the tort of false imprisonment.

For the reasons discussed in depth below, the Court will **GRANT** Defendants' Motions to Dismiss. The Court will **DENY** both Defendant Rubin's Motion for Sanctions and Plaintiffs' Request for Sanctions against Defendant Rubin, and will **DENY** Plaintiffs' Motion for Leave to File an Amendment to the Second Amended Complaint.

## FACTUAL BACKGROUND

Given the nature of Defendants' motions, the Court will accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012).

Plaintiff Marusza was struck by a car while on the job in October 2011. The accident caused him to suffer a traumatic brain injury ("TBI") and injuries to his spine and shoulder. Plaintiff Gucwa, Marusza's girlfriend, provided attendant care services for his brain and spine injuries.

Defendant Accident Fund Insurance Company ("AF") administered workers' compensation insurance under a contract of insurance through Marusza's employer. Plaintiffs allege that AF hired the doctor defendants for the purpose of obtaining fraudulent reports supporting the denial of benefits, and that the doctor defendants consistently wrote biased reports favorable to AF. Relying on reports prepared by Doctors Ager, Baker, Rubin, and Lawley, AF refused to pay for attendant care services provided by Gucwa and for treatment Marusza received for his shoulder injuries. Medicare paid for some of the treatment costs that AF refused to cover.

Plaintiffs submitted claims to the workers' compensation agency. After a series of hearings held in October-December of 2015, Magistrate Beatrice B. Logan, of the Workers' Compensation Board, made the following relevant factual findings as to Mr. Marusza:

- Plaintiff sustained a mild traumatic brain injury, injury to his neck, left and right shoulders, lower back, and vision problems as a result of the October 2011 motor vehicle accident;
- Plaintiff returning to useful work is probably not practical;
- Plaintiff lost all wage earning capacity due to the injuries he sustained;
- Plaintiff's treatment was needed for the problems related to the TBI and orthopedic injuries Plaintiff sustained as a result of the motor vehicle accident;
- Defendant Accident Fund is responsible for the reasonable and necessary medical treatment, including the residual TBI treatment and the orthopedic injuries;

- Accident Fund shall pay for reasonable and necessary medical treatment of Plaintiff's employment-related condition of the TBI, the convergence insufficiency, hyperphoria, ptosis, end point nystagmus, and the orthopedic injuries Plaintiff sustained as a result of the accident;
- Plaintiff cannot return to his former job with Defendant, any of his past jobs, or any employment other than a sheltered workshop;

(Dkt. 79, Pg. ID 1220-25).

The Magistrate ordered Accident Fund to pay Plaintiff Marusza worker's compensation benefits at the rate of $592.88 per week from October 19, 2011 until otherwise ordered and to pay for reasonable and necessary medical treatment for Plaintiff's employment related injury. Accident Fund paid Plaintiff Marusza $74,382.00 on August 12, 2016. (Dkt. 102-1, Pg. ID 1846).

## PROCEDURAL HISTORY

The Court will recite only the pertinent parts of the procedural history of this case. After Plaintiffs filed their Amended Complaint [Dkt. 2] in March 2015, the Defendants filed their Motions to Dismiss [Dkt. 27, 32-34, 36] in April and May 2015. Further briefing on these motions followed, and in lieu of a hearing, the Court met with counsel for a status conference in November 2015. The Court adjourned the hearing until after the Workers' Compensation Board issued a written decision in Marusza's case.

Plaintiffs filed their Second Amended Complaint [Dkt. 75] in April 2016. The Workers' Compensation Board Magistrate issued an Opinion and Order [Dkt.

79] on May 23, 2016. Thereafter, Defendants filed their Motions to Dismiss the Second Amended Complaint [Dkt. 81, 83-86] in late July 2016. Both parties timely briefed their Responses [Dkt. 93-97] and Replies [Dkt. 98-102] by October 2016.

Defendant Dr. Barry Rubin filed a Motion for Sanctions (Dkt. 104) on November 8, 2016. Plaintiffs then filed a Motion for Leave to File an Amendment to the Second Amended Complaint [Dkt. 106] on November 21, 2016. After a hearing on December 2, 2016, the Court took all motions under advisement.

## I.    Defendants' Motions to Dismiss

### STANDARD OF REVIEW

All Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  To survive such a motion, Plaintiffs must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A plaintiff's complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal, 556 U.S. at 678* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Courts are not required to accept as true legal conclusions framed as factual allegations. *See Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

Plaintiffs bring claims under RICO against Defendants AF and Doctors Baker, Lawley, and Ager. They also assert tortious interference claims against all of the doctors. Finally, Plaintiffs allege that AF has violated the Medicare Secondary Payer Act ("MSPA") and that AF and Dr. Baker are liable for the tort of false imprisonment.

### A. Racketeer Influenced and Corrupt Organizations ("RICO") Act

Plaintiffs suing under RICO must establish that illegal racketeering activities have caused them injury "in [their] business or property." 18 U.S.C. § 1964(c). To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). The pattern element requires continuity, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 354 (6th Cir. 2008) (internal

quotations omitted). A plaintiff must also allege (5) an "injury to business or property" that is (6) proximately caused by the defendants' racketeering activity. *Jackson v. Sedgwick Claims Management Services*, 731 F.3d 556, 563–64 (6th Cir. 2013) (en banc). Furthermore, plaintiffs must demonstrate that "a RICO predicate offense not only was a 'but-for' cause of [the] injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010).

Plaintiffs argue that Defendants AF, Ager, Baker, and Lawley conducted an enterprise through a pattern of mail and wire fraud—specifically, the preparation (and mailing) of false medical reports intended to serve as a pretext for denying Plaintiffs and others workers' compensation benefits.

### 1. Plaintiff Marusza's RICO Claim

Although Plaintiff Marusza concedes that his RICO claim is fatal "as the law now stands in the Sixth Circuit" (Dkt. 97, Pg. ID 1703), he nevertheless argues that *Jackson* should not bar an injured worker from bringing a claim against an independent examiner. 731 F.3d at 563–64. He also purports to sue Defendant AF under RICO in an attempt to preserve his allegations in the event that *Jackson* is reversed "and holds that an injured person has a claim for damage to property under RICO." (Compl. ¶7B). Plaintiff may not now "reserve" his RICO claim on the basis of such speculation. If *Jackson* is overturned at some future date, Plaintiff

could then "seek leave to amend his complaint to add a RICO claim." *Prieur v. Acuity*, 143 F. Supp. 3d 670, 671 n.2 (E.D. Mich. 2015) (Parker, J.).

The Court will dismiss Plaintiff's RICO claim because he has failed to allege injury to business or property. *Jackson*, and a subsequent case, *Brown v. Ajax Paving Industries, Inc.*, are on point: in both cases, plaintiffs who were denied workers' compensation benefits for work-related injuries brought RICO claims against their employers, their employers' workers' compensation claim administrators, and alleged "cut-off" doctors. *See Brown*, 752 F.3d 656, 657 (6th Cir. 2014); *Jackson*, 731 F.3d at 558. Sitting en banc, the *Jackson* Court held that the claims were properly dismissed because "racketeering activity leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to 'business or property' under RICO." *Jackson*, 731 F.3d at 566. Likewise, in *Brown*, the Sixth Circuit rejected the argument that *Jackson*'s holding applied only to RICO claims brought by an employee against his employer. *Jackson*'s reasoning, it explained, "applies with equal force whether an employee sues his employer or somebody else." *Brown*, 752 F.3d at 658; *see also id.* (stating that the RICO Act's applicability turns on the nature of the plaintiff's injury, not the nature of the defendant).

Plaintiff argues that his claims can proceed because he is only bringing them against "independent medical examiners," and "*Jackson* never specifically

considered whether a RICO claim brought by an injured worker against an 'independent' examiner is sufficiently removed from the 'personal injury' giving rise to the workers' compensation claim that it may be considered an injury to 'business or property' within RICO." (Compl. ¶6). Because this argument ignores the reasoning of both *Jackson* and *Brown*, it is meritless, and Plaintiff's RICO claim is dismissed.

### 2. Plaintiff Gucwa's RICO Claim

Unlike Marusza or the *Jackson* and *Brown* plaintiffs, Gucwa is not an employee claiming workers' compensation for her own personal injury[1]; rather, she provided medical care to the injured employee and claims workers' compensation as reimbursement. The Court finds this distinction irrelevant and holds that Gucwa's claim fails because she cannot prove that the alleged racketeering activities caused injury to her business or property.

*Brown* articulates two reasons as to why similar claims have previously failed:

> One was that workers' compensation compensates for personal injury. The [RICO] Act, which puts its spotlight on "business or property," does not cover losses that flow from personal injuries. The other was that a contrary rule would allow the Act to police fraud in the workers' compensation system, planting the national banner on land

---

[1] "A personal injury – that is, an injury 'to a person, such as a broken bone, a cut, or a bruise" or a 'bodily injury' is different in kind from an injury to 'business or property,' in the sense that these terms are commonly understood." *Jackson*, 731 F.3d at 564 (quoting Black's Law Dictionary 857 (9th ed. 2009)).

> traditionally patrolled by the States. The Act does not speak with
> enough clarity . . . to authorize such an intrusion.

*Brown*, 752 F.3d at 657 (internal citations omitted). The *Jackson* holding applies to

any suit brought by the injured employee, regardless of the defendant, because

"[c]hanging the defendant neither weakens the link between the benefits and

personal injury nor dims the respect owed to the States' authority over workers'

compensation." *Id.* at 658.

Plaintiffs' position is that changing the *plaintiff* to a caregiver does

"weaken[] the link between the benefits and personal injury." *Id.* Plaintiffs

highlight four decisions from this District in which courts held that a medical

provider's loss of reimbursement from some form of insurance benefits is

sufficiently removed from the underlying personal injury to suffice as a RICO

injury. *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic,*

*P.C.*, No. 14-11521, 2015 WL 4724829 (E.D. Mich. Aug. 10, 2015) (Goldsmith,

J.) (explaining that the "business dispute between an insurance company and the

medical providers . . . relates to harm to business or property, not personal

injury."); *State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc.*, No. 14-

10266, 2014 WL 5427170, at *8 (E.D. Mich. Oct. 24, 2014) (Levy, J.) (the court

did not interpret *Jackson* to bar claims by "doctors, hospitals, and any number of

nonprofits directly injured in their business dealings involving personal injuries");

*Allstate Insurance Company v. Medical Evaluations, P.C.*, No. 13-14682, 2014

WL 2559230 (E.D. Mich. June 6, 2014) (Leitman, J.); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.,* No. 12-11500, 2014 WL 555199 (E.D. Mich. Feb. 12, 2014) (O'Meara, J.) (*Jackson* did not bar medical clinics' RICO claims based on blanket denials of personal injury protection benefits because their loss of reimbursement for services provided was an injury to business or property).

Plaintiffs' arguments are misplaced. Gucwa is not a professional caregiver and only provided medical care to Marusza in her capacity as his girlfriend. The above-cited cases are also distinguishable because they involved claims brought under Michigan's No-Fault Insurance Act and defendants who were commercial entities – rehabilitative clinics, medical billing firms, and other corporations. *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("When *a commercial enterprise suffers a loss of money*[,] it suffers an injury in both its 'business' and its 'property.'") (emphasis added). Also notable is the fact that, in November 2015, Gucwa withdrew her workers' compensation claim for attendant care services because she is not considered a 'provider' as defined in the Michigan Administrative Health Care Services Workers Compensation Rules,[2] and thus, she no longer asserts entitlement to benefits for services rendered. (Dkt. 85-4, Pg. ID 1609).

---

[2] The Michigan Administrative Health Care Service Workers Compensation Rule 418.10109(p) defines 'provider' as "a facility, health care organization, or a practitioner." Another provision of this Rule states that a practitioner is "an individual who is licensed, registered, or certified." Rule 418.10109(l).

Plaintiff Gucwa's role as a non-professional, unlicensed, attendant care provider is not comparable to that of a commercial enterprise, such as a licensed doctor or rehabilitative clinic, such that Gucwa can sufficiently establish that she suffered injury to her business or property. Her claimed damages are too intimately connected with Marusza's personal injury underlying his workers' compensation claim to constitute an injury to business or property that is recoverable under RICO. *See Lewis v. Drouillard*, 788 F. Supp. 2d 567, 570 (E.D. Mich. 2011) (Roberts, J.); *Jackson*, 731 F.3d at 566 (emphasizing that "an award of benefits under a workers' compensation system *and any dispute over those benefits are inextricably intertwined with a personal injury giving rise to the benefits*.") (emphasis added).

It is undisputed that AF paid Marusza $74,382.00 in August 2016 as ordered by the Workers' Compensation Magistrate. (Dkt. 102-1, Pg. ID 1846). Plaintiffs suggest that Accident Fund wrote a check to Marusza, rather than Gucwa, only "because [it] knew this decision was pending." (Tr. 26:24-25, 27:1-7). This argument is baseless.[3] The bottom line is, AF paid, as directed. Once AF wrote Marusza a check, it was under no obligation to pay anyone else. *Id.* at 27:14-17. That Gucwa did not receive any portion of that money is no fault of Accident Fund's.

---

[3] Plaintiffs' counsel acknowledged during the hearing that he did not have proof to support this claim and that he "can only infer [Accident Fund] paid it directly to Marusza." (Tr. 27:2-7).

The Court now finds that Gucwa lacks standing to sue Defendants under RICO. The record is devoid of evidence showing how Gucwa has "any contractual or other rights against the defendants," nor has Gucwa shown "what duty was owed [her] . . . nor how any defendant deprived [her] of a benefit due [her]." *Palmer v. Nationwide Mutual Insurance Company*, 945 F.2d 1371, 1376 (6th Cir. 1991). It is abundantly clear that Gucwa has no legal basis upon which to maintain a claim in her own capacity for the workers' compensation reimbursement owed to Marusza.

### B. Tortious Interference with Contract or Business Expectancy

The Court will dismiss Plaintiffs' state claims for tortious interference with contract or business expectancy against Defendants Ager, Baker, and Rubin. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). Plaintiffs allege that by supplying their false reports, Ager, Baker, and Rubin induced AF to breach its workers' comp insurance contract with Marusza's employer. Furthermore, according to Plaintiffs, the Michigan Supreme Court recognized the validity of such a claim in *Dubuc v. El-Magrabi*, 795 N.W.2d 593, 594 (Mich. 2011) (Mem. Op.).

The allegations in *Dubuc* differ from those in this matter in a critical respect: here, AF allegedly had a pre-existing intent to deny workers' compensation benefits and hired the doctor defendants to effectuate that intent by providing a pretext for the denial. In other words, Plaintiffs have alleged that the doctor defendants did *not* induce the breach; rather, AF intended to breach the contract all along.

Plaintiffs also purport to allege tortious interference with a business expectancy. Under Michigan law, this is a separate cause of action from tortious interference with contract. *Health Call*, 706 N.W.2d at 848. Its elements are

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Id.* at 849. Plaintiffs have not shown that these elements are satisfied, and their claims are therefore dismissed.

## C. Medicare Secondary Payer Act

Marusza maintains that *Jackson*'s holding conflicts with the intent of the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395(y), in that it improperly requires Medicare to pay for medical bills that should have been paid by the workers' compensation insurer. The MSPA "designates certain private

entities – such as a group health plan, a worker's compensation plan, or an automobile or liability insurance plan – as 'primary payers' that have the responsibility to pay for a person's medical treatment." *Stalley v. Methodist Health Care*, 517 F.3d 911, 915 (6th Cir. 2008). The MSPA does not require Medicare to pay "if payment for covered medical services has been or is reasonably expected to be made by a private payer." *Nawas v. State Farm Mut. Auto. Ins.*, No. 13-11158, 2014 WL 4605601, at *3 (E.D. Mich. Sept. 15, 2014) (Berg, J.) (citing 42 U.S.C. § 1395y(b)(2)(A)). However, "[i]f the primary payer has not paid and will not promptly do so," Medicare may "conditionally pay the cost of the treatment." *Stalley*, 517 F.3d at 915; *see also* 42 U.S.C. § 1395y(b)(2)(B)(i). The MSPA further creates a private right of action for double damages against a primary insurer that fails to pay medical expenses and thereby lets Medicare foot the bill instead. *See Bio-Medical Applications of Tenn., Inc. v. Central States S.E. & S.W Areas Health & Welfare Fund*, 656 F.3d 277, 284 (6th Cir. 2011) (citing 42 U.S.C. § 1395y(b)(3)(A)). Two conditions precedent must be met before a plaintiff may invoke the MSPA: "[f]irst, Medicare must have actually made payments on the claimant's behalf . . . second, the primary insurer must be 'responsible' for paying the benefits at issue." *Geer v. Amex Assur. Co.*, No. 09-11917, 2010 WL2681160, at *4 (E.D. Mich. July 6, 2010) (Zatkoff, J.).

AF raises two arguments. First, it claims that there is no evidence in the workers' compensation record that Medicare actually paid for any of Plaintiff Marusza's medical bills at issue.[4] Specifically, AF challenges the complaint's failure to identify specific payments that Medicare made. Plaintiff contends that there is nothing requiring a workers' compensation claimant to prove that Medicare paid medical bills. AF maintains that as of December 2, 2016 (the date of the hearing), it has not received a final determination letter from Medicare, and therefore, no payment to Medicare from AF is due.[5]

AF also asserts that a cause of action does not accrue under the MSPA until there is some sort of adjudication or settlement demonstrating the defendant's responsibility for the expenses. However, the Sixth Circuit expressly rejected this line of reasoning in *Bio-Medical*.  The MSPA's "demonstrated responsibility" provision applies only to lawsuits brought by Medicare against tortfeasors; it does not apply to suits brought by private parties or to suits against private insurers. *Bio-Medical*, 656 F.3d at 279.  Since Marusza is a private party suing a private insurer, AF's "demonstrated responsibility" argument is no good.

---

[4] In her Opinion, Magistrate Judge Logan noted that "[t]here was no evidence presented at the hearings of unpaid medical bills. It appears Auto-Owners paid the medical bills that defendant did not pay and they are seeking reimbursement." Dkt. 79, Pg. ID 1594.

[5] INSURER NGHP RECOVERY, https://www.cms.gov/medicare/coordination-of-benefits-and-recovery/insurerservices/insurer-NGHP-recovery.html (modified on Dec. 21, 2015, 12:56 P.M.) (explaining that the Commercial Repayment Center "issues a recovery demand letter advising the applicable plan of the amount of money owed to Medicare.").

The Court finds a more serious problem with Plaintiff's claim. The *Bio-Medical* Court acknowledged that the MSPA's private cause of action is not a *qui tam* provision, which would transfer the government's standing to a private party. 656 F.3d at 296 n.17.  To have standing, MSPA plaintiffs "must suffer their own harm," as opposed to the harm suffered by Medicare (i.e., Medicare's loss of money when it pays expenses that a private payer should have paid).  *Id.*  The *Bio-Medical* plaintiff had standing because he alleged that Medicare paid him *less* than the primary insurer would have paid.  *Id.*

Marusza has not alleged that he was paid less by Medicare or that he was in any other way harmed by the fact that Medicare, rather than AF, paid for treatment. Accordingly, the Court will dismiss Marusza's MSPA claim for lack of standing.

## D. False Imprisonment

Plaintiff Marusza concedes that his false imprisonment claim fails in light of *Sheehan v. Star Insurance Company*, in which the Sixth Circuit – affirming this Court – held that the plaintiff's actions, like those here, "were sufficiently voluntary that there was no imprisonment . . . and there is no indication that the Michigan Supreme Court would likely say otherwise." No. 16-1692, 2016 WL 6872049, at *1 (6th Cir. Nov. 22, 2016). The Court will therefore dismiss Plaintiff's false imprisonment claim.

## II.     Defendant Doctor Barry Rubin's Motion for Sanctions and Plaintiffs' Requests for Sanctions

Per Federal Rule of Civil Procedure 11(b), when a motion or document is

filed with the court, a party or counsel represents to the court that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

*Oakstone Cmty. Sch. v. Williams*, No. 14-3742, 615 F. Appx. 284, 288 (6th Cir.

2015) (unpublished). Fed. R. Civ. P. 11(c) authorizes the Court to impose sanctions

if it finds that Rule 11(b) has been violated. In making this determination, the

Court should focus on whether "the attorney believes on the basis of reasonable

inquiry that there is a reasonable basis in law and fact for the position taken and

that the paper is not filed for an improper purpose." *Id.* (quoting *Jackson v. Law

Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th

Cir.1989)).  When deciding whether to impose sanctions, the Court implements a

standard of objective reasonableness. *Montell v. Diversified Clinical Servs., Inc.*,

757 F.3d 497, 510 (6th Cir. 2014).

A party's egregious conduct may warrant monetary sanctions, which can include "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," but "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  The party seeking sanctions must serve the motion within the safe harbor period so that the opposing party has "sufficient opportunity . . . to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention." *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997).

According to Defendant Dr. Rubin, Plaintiffs' claims are frivolous because Rubin submitted his independent medical examination report in May 2014, two years *after* Defendant AF first denied Plaintiff Marusza his benefits. Therefore, he says, he could not have committed tortious interference.[6] Rubin also maintains that Plaintiffs' attorney should be sanctioned[7] because he presented to the Court a frivolous, unwarranted legal theory – specifically, that a party can be liable for tortious interference for causing a continuation of the initial breach.

Plaintiffs argue that these claims are not sanctionable because disability workers' compensation claimants "may make a stream of claims as services are

---

[6] AF denied Plaintiffs' claims for workers' compensation benefits in June 2012.

[7] Pursuant to Federal Rule of Civil Procedure 11(c)(5)(A), the court may not impose a monetary sanction against a represented party for violating Rule 11(b)(2).

provided." (Dkt. 105, Pg. ID 1893). Because a person could file claims over the span of many years for an old injury, Plaintiffs contend, the insurer will continually evaluate new claims and either grant or deny benefits. They further state that if they prevail, Defendant should pay sanctions to them pursuant to Federal Rule of Civil Procedure 11(c)(2).

The Court will deny Defendant Rubin's Motion for Sanctions and Plaintiffs' Request for Sanctions because the basis for Plaintiffs' claims against Rubin was not unreasonable. Furthermore, there is no indication that any of the claims were filed for an improper purpose or that any of the parties or their counsel engaged in egregious conduct. *See Montell*, 757 F.3d at 510.

### III.   Plaintiffs' Motion for Leave to File an Amendment to the Second Amended Complaint

Plaintiffs move for leave to amend the Second Amended Complaint. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "When considering whether to grant leave to amend a complaint, the court considers '[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party . . . and futility.'" *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Though Rule 15(a) indicates that leave to amend shall be freely granted, "[a]mending would be futile if a proposed amendment would not survive a motion to dismiss." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014).

Plaintiffs' Motion for Leave to Amend the Second Amended Complaint is denied, as any proposed amendments would be insufficient to defeat Defendants' Motions to Dismiss.

### CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss the Second Amended Complaint [Dkt. 81, 83-86] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Rubin's Motion for Sanctions [104] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend [106] is **DENIED**.

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: January 23, 2017          Senior United States District Judge